UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

EMILY SUE BRIDGER,

    Plaintiff,

v.                                                                        Case No. 6:22-cv-391-MAP

COMMISSIONER OF SOCIAL SECURITY

    Defendant.
_____/

**ORDER**

Plaintiff seeks judicial review of the denial of her claim for child's disability insurance benefits (DIB).[1] Plaintiff argues that the Administrative Law Judge (ALJ) committed reversible error by failing to provide substantial evidence in support of his assessment of the medical opinion evidence and Plaintiff's subjective complaints in determining Plaintiff's residual functional capacity (RFC). As the ALJ's decision was not based on substantial evidence and failed to employ proper legal standards, the Commissioner's decision is reversed and remanded.

*I.    Background*

Plaintiff, who was born in 2002, claimed disability beginning August 1, 2015 (Tr. 30, 132-33).[2] She was 13 years old on the alleged onset date but attained the age

---

[1] The parties have consented to my jurisdiction. *See* 28 U.S.C. § 636(c).
[2] Although the application indicates that Plaintiff was born in 2022, Plaintiff testified that she was born in 2002 (Tr. 30). Accordingly, the 2022 entry represents a scrivener's error.

of 18 on March 21, 2020, so the relevant period was from March 21, 2020, through May 13, 2021, the date of the ALJ's decision (Tr. 13). Plaintiff graduated from high school, after participating in vocational rehabilitation for a couple months, but had no past relevant work experience (Tr. 31, 209-10). Plaintiff alleged disability due to Asperger's syndrome (Tr. 209).

Given her alleged disability, Plaintiff filed an application for child's DIB (Tr. 132-38). The Social Security Administration (SSA) denied Plaintiff's claims both initially and upon reconsideration (Tr. 41-80). Plaintiff then requested an administrative hearing (Tr. 81-83). Per Plaintiff's request, the ALJ held a telephonic hearing at which Plaintiff appeared and testified (Tr. 25-40). Following the hearing, the ALJ issued an unfavorable decision finding Plaintiff not disabled and accordingly denied Plaintiff's claims for benefits (Tr. 8-24).

In rendering the administrative decision, the ALJ determined that Plaintiff was born on March 22, 2002, and had not attained the age 22 as of August 1, 2015, the alleged onset date, nor engaged in substantial activity since that date (Tr. 13). After conducting a hearing and reviewing the evidence of record, the ALJ determined that Plaintiff had the following severe impairments: Asperger's syndrome, obesity, and a sleep disorder (Tr. 13). Notwithstanding the noted impairments, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 14). The ALJ then concluded that Plaintiff retained the RFC to perform medium work, except that Plaintiff needed to avoid ladders and unprotected

heights; needed to avoid operating heavy moving machinery; needed a low-stress work environment, meaning no production line; needed simple tasks; and needed to avoid contact with the public (Tr. 15). In formulating Plaintiff's RFC, the ALJ considered Plaintiff's subjective complaints and determined that, although the evidence established the presence of underlying impairments that reasonably could be expected to produce the symptoms alleged, Plaintiff's statements as to the intensity, persistence, and limiting effects of her symptoms were not entirely consistent with the medical evidence and other evidence (Tr. 16).

The ALJ found that Plaintiff had no past relevant work, was classified as a younger individual on the alleged disability onset date, had a limited education, and that transferability of skills was not an issue because of Plaintiff's lack of any past relevant work (Tr. 19). Given Plaintiff's background and RFC, a vocational expert (VE) testified that Plaintiff could perform jobs existing in significant numbers in the national economy, such as a hand packager, a day worker, a produce weigher, and an agriculture produce sorter (Tr. 19-20, 37-40). Accordingly, based on Plaintiff's age, education, work experience, RFC, and the testimony of the VE, the ALJ found Plaintiff not disabled (Tr. 20). Given the ALJ's finding, Plaintiff requested review from the Appeals Council, which the Appeals Council denied (Tr. 1-5, 130-31). Plaintiff then timely filed a complaint with this Court (Doc. 1). The case is now ripe for review under 42 U.S.C. § 405(g).

II.   *Standard of Review*

To be entitled to benefits, a claimant must be disabled, meaning he or she must

be unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months.  42 U.S.C. § 423(d)(1)(A).  A "physical or mental impairment" is an impairment that results from anatomical, physiological, or psychological abnormalities, which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.  42 U.S.C. § 423(d)(3).

To regularize the adjudicative process, the SSA promulgated the detailed regulations currently in effect.  These regulations establish a "sequential evaluation process" to determine whether a claimant is disabled.  20 C.F.R. § 404.1520.  If an individual is found disabled at any point in the sequential review, further inquiry is unnecessary.  20 C.F.R. § 404.1520(a).  Under this process, the ALJ must determine, in sequence, the following:  whether the claimant is currently engaged in substantial gainful activity; whether the claimant has a severe impairment, *i.e.*, one that significantly limits the ability to perform work-related functions; whether the severe impairment meets or equals the medical criteria of 20 C.F.R. Part 404 Subpart P, Appendix 1; and whether the claimant can perform his or her past relevant work.  20 C.F.R. § 404.1520(a)(4).  If the claimant cannot perform the tasks required of his or her prior work, step five of the evaluation requires the ALJ to decide if the claimant can do other work in the national economy in view of his or her age, education, and work experience.  20 C.F.R. § 404.1520(a)(4)(v).  A claimant is entitled to benefits only

if unable to perform other work. *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987); 20 C.F.R. § 404.1520(g)(1).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence and comports with applicable legal standards. *See* 42 U.S.C. §§ 405(g), 1383(c)(3). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (citation and internal quotation marks omitted). While the court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions. *Ingram v. Comm'r of Soc. Sec.*, 496 F.3d 1253, 1260 (11th Cir. 2007) (citations omitted).

In reviewing the Commissioner's decision, the court may not reweigh the evidence or substitute its own judgment for that of the Commissioner, even if it finds that the evidence preponderates against the Commissioner's decision. *Mitchell v. Comm'r of Soc. Sec.*, 771 F.3d 780, 782 (11th Cir. 2014); *Winschel*, 631 F.3d at 1178 (citations omitted); *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). The Commissioner's failure to apply the correct law, or to give the reviewing court sufficient reasoning for determining that he or she has conducted the proper legal analysis, mandates reversal. *Ingram*, 496 F.3d at 1260 (citation omitted). The scope of review is thus limited to determining whether the findings of the Commissioner are supported by substantial evidence and whether the correct legal standards were

applied. 42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002) (*per curiam*) (citations omitted).

    III.    *Discussion*

        A.    *Medical Opinions*

Plaintiff first argues that the ALJ erred by failing to properly consider the medical opinions of Jennifer Meyer, Ph.D.; Alexa Barnett, Psy.D.; and Raena Baptiste-Boles, Psy.D., in setting forth Plaintiff's RFC assessment. Under the regulations, an ALJ will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion or prior administrative finding, including from a claimant's medical source. 20 C.F.R. § 404.1520c(a). Rather, in assessing a medical opinion, an ALJ considers a variety of factors, including but not limited to whether an opinion is well-supported, whether an opinion is consistent with the record, the treatment relationship between the medical source and the claimant, and the area of the medical source's specialization. 20 C.F.R. § 404.1520c(c)(1)-(4). The primary factors an ALJ will consider when evaluating the persuasiveness of a medical opinion are supportability and consistency. 20 C.F.R. § 404.1520c(a) & (b)(2). Specifically, the more a medical source presents objective medical evidence and supporting explanations to support the opinion, the more persuasive the medical opinion will be. 20 C.F.R. § 404.1520c(c)(1). Further, the more consistent the medical opinion is with the evidence from other medical sources and nonmedical sources, the more persuasive the medical opinion will be. 20 C.F.R. § 404.1520c(c)(2). And, in assessing the supportability and consistency of a medical opinion, the regulations

provide that the ALJ need only explain the consideration of these factors on a source-by-source basis – the regulations do not require the ALJ to explain the consideration of each opinion from the same source. *See* 20 C.F.R. § 404.1520c(b)(1). Beyond supportability and consistency, an ALJ may also consider the medical source's specialization and the relationship the medical source maintains with the claimant, including the length of the treatment relationship, the frequency of examinations, the purpose of the treatment relationship, the extent of the treatment relationship, and whether the medical source examined the claimant, in addition to other factors. 20 C.F.R. § 404.1520c(c)(3)(i)-(v), (4), & (5). While the ALJ must explain how he or she considered the supportability and consistency factors, the ALJ need not explain how he or she considered the other factors.³ 20 C.F.R. § 404.1520c(b)(2).

    1.    Dr. Meyer

Plaintiff first argues that the ALJ failed to properly consider the opinion of Dr. Meyer, a state agency psychological consultant. Dr. Meyer reviewed the evidence of record and rendered an opinion as to Plaintiff's impairments and limitations in October 2020 (Tr. 58-62). After reviewing the evidence, which Dr. Meyer discussed at length, Dr. Meyer determined that Plaintiff had the severe impairment of autism spectrum disorder, which caused Plaintiff mild limitations in her ability to understand, remember, or apply information; moderate limitations in her ability to interact with

---

³ The exception is when the record contains differing but equally persuasive medical opinions or prior administrative medical findings about the same issue. *See* 20 C.F.R. §§ 404.1520c(b)(3), 416.920c(b)(3).

others; moderate limitations in her ability to concentrate, persist, or maintain pace; and moderate limitations in her ability to adapt or manage herself (Tr. 58-59). More specifically, Dr. Meyer found that Plaintiff appeared capable of understanding simple and most detailed work-like procedures and instructions, so Plaintiff was not significantly limited as to understanding and memory (Tr. 61). With respect to sustained concentration and persistence, Dr. Meyer opined that Plaintiff would likely experience problems carrying out detailed instructions, maintaining sustained attention and concentration, and completing work tasks at a consistent pace but would remain capable of working without excessive supervision or assistance, working with others, and sustaining attention to complete simple, repetitive tasks for two-hour segments over an eight-hour workday (Tr. 61). Regarding Plaintiff's social interaction limitations, Dr. Meyer concluded that Plaintiff had a history of interpersonal difficulties and would perform best in settings requiring minimal social interaction, especially with unfamiliar persons, as she experienced moderate limitations in her ability to interact with the general public, to accept instructions and respond appropriately from supervisors, and to get along with coworkers or peers without distracting them or exhibiting behavioral extremes (Tr. 62). Lastly, as to adaptation, Dr. Meyer found that Plaintiff would find it difficult to appropriately respond to high-stress and fast-paced work environments and independently initiating tasks but could complete tasks in most structured settings and adapt to simple or gradual changes in the work environment (Tr. 62). Dr. Meyer also noted that Plaintiff would experience moderate limitations in her ability to respond appropriately to changes in the work

setting, to setting realistic goals or making plans independently of others, and traveling to unfamiliar places or using public transportation, such that Plaintiff might need accompaniment when traveling to new locations, although Plaintiff could independently travel to familiar places (Tr. 62).

### 2. Dr. Barnett

Plaintiff also contends that the ALJ improperly considered the opinion of Dr. Barnett, a psychological consultative examiner. In July 2020, Plaintiff reported to Dr. Barnett for a limited psychological evaluation with IQ testing (Tr. 373-75). Dr. Barnett indicated that Plaintiff appeared and behaved slightly younger than her stated age but was friendly and cooperative throughout the evaluation (Tr. 373). Upon examination, Dr. Barnett observed that Plaintiff was alert, was fully oriented, was dressed nicely and adequately groomed, maintained appropriate eye contact, and showed fluent speech with a normal rate, rhythm, and tone, although she spoke at a high volume and was overall verbose (Tr. 373-74). According to Dr. Barnett, Plaintiff expressed that she was in a good mood, and her motional expression was consistent with the topics discussed (Tr. 374). Plaintiff also displayed a logical and organized thought process during the evaluation, though she also showed some evidence of concrete thinking (Tr. 374). Plaintiff neither demonstrated or reported a significant memory impairment, and her memory recall was 3/3 after a brief delay (Tr. 374). Plaintiff showed no signs of a thought disorder, as she answered all questions posed to her and exerted a great amount of effort in the evaluation, but, when presented with a difficult task, Dr. Barnett observed that Plaintiff changed the subject and began talking about personal

interests (Tr. 374). Plaintiff appeared to have trouble understanding the purpose of some subtests, but, with repeated and paraphrased instruction, she could understand the task (Tr. 374). Overall, Dr. Barnett found Plaintiff was able to be redirected to the task and was cooperative with testing (Tr. 374).

Following the mental status and behavioral examination, Dr. Barnett administered the Wechsler Adult Intelligence Scale test to assess Plaintiff's intellectual functioning (Tr. 374-75). Dr. Barnett noted that Plaintiff demonstrated an adequate ability to follow directions and respond to items appropriately, therefore rendering the scores valid for interpretation (Tr. 374). Dr. Barnett indicated that Plaintiff obtained a Full Scale IQ of 97, which placed Plaintiff's overall functioning in the average range, and Plaintiff's performance across all composite scores were average (Tr. 374-75).

Dr. Barnett concluded that Plaintiff's general presentation, mental status examination, history, and current psychological testing suggested that Plaintiff functioned at a level of capacity with no overt impairments, although Plaintiff evidenced some nuanced weaknesses intellectually (Tr. 375). As an example, Dr. Barnett stated that Plaintiff demonstrated some mild impairment within the verbal comprehension and perceptual reasoning indices, but her abilities in other areas of those indices were better developed and likely allowed her to compensate for any deficits she might have experienced (Tr. 375). Overall, Dr. Barnett found that Plaintiff's intellectual ability was average across all domains, and that Plaintiff could improve with proper social and vocational supports that could cater to her strengths, such as her ability to manipulate and use information (Tr. 375). Regarding Plaintiff's

attention and concentration, Dr. Barnett stated that Plaintiff was in the average range, though, when Plaintiff was disinterested in a topic, she would likely become distracted with her own interests, so Plaintiff would most likely be successful with tasks she felt passionate in or eager to learn (Tr. 375). Plaintiff's effort was noted as adequate and without overt difficulties when challenged by the examiner (Tr. 375). Dr. Barnett found Plaintiff's ability to acquire and use information, attend to, and complete tasks generally adequate (Tr. 375). Finally, with respect to Plaintiff's ability to interact with others, Dr. Barnett concluded that Plaintiff's ability was variable, as she may have difficulty relating to others in a broad sense but was also likely to maintain a strong ability to relate to those who share a common interest (Tr. 375). As Dr. Barnett's report indicated, Dr. Barnett based her opinion on the information obtained from Plaintiff and her mother, a review of available medical records, a mental status and behavioral examination, and IQ testing (Tr. 373-75).

    3.  *Dr. Baptiste-Boles*

Lastly, Plaintiff asserts that the ALJ erred in considering the opinion of Dr. Baptist-Boles, a psychological evaluator. In August 2020, Plaintiff reported to Dr. Baptist-Boles for a psychological evaluation to assist in obtaining vocational rehabilitation services (Tr. 377-82). Dr. Baptist-Boles did not review any prior records but obtained information from Plaintiff and her mother and conducted a mental status examination, IQ testing, achievement testing, and adaptive functioning testing (Tr. 377-82). Dr. Baptist-Boles indicated that Plaintiff presented as properly dressed with adequate hygiene and appeared her stated age (Tr. 378-79). On mental status

examination, Plaintiff was alert, excited, and fidgety with relaxed posture and average eye contact (Tr. 379). Plaintiff was open, charming, candid, and friendly interpersonally, and she established rapport easily with Dr. Baptist-Boles and maintained it throughout the examination (Tr. 379). According to Dr. Baptist-Boles, Plaintiff exhibited reciprocity but lacked spontaneous conversation, and, though her speech production was fast-paced and rapid, the content of her speech appeared thoughtful (Tr. 379). Plaintiff showed concrete thought processes and was oriented on all spheres but was unaware of time, date, state, and town (Tr. 379). Dr. Baptist-Boles noted that Plaintiff did not appear to have any distress, her facial expressions were normal and responsive, her mood appeared calm, her affect was appropriate, no delusional mentation was apparent, no hallucinations were apparent, and she denied any current suicidal or homicidal ideation, plan, or intent (Tr. 379).

Dr. Baptist-Boles indicated that Plaintiff's judgment was adequate, as Plaintiff was able to anticipate outcomes, and, based on Plaintiff's response to proverbs, sayings, or similarities, Plaintiff's abstraction was developed (Tr. 379). Plaintiff was noted to be "somewhat insightful as far as psychological symptoms were concerned," although she appeared to be below average in concentration and attention (Tr. 379). Plaintiff's working memory appeared average since she could spell the word "world" backwards and perform serial 7s (Tr. 379). Dr. Baptist-Boles stated that Plaintiff did not require directions and instructions to be repeated, and Plaintiff's immediate memory was adequate, as she could recall two of three words after a three-minute delay (Tr. 379). Dr. Baptist-Boles noted that Plaintiff was a poor historian based on

her ability to recall salient aspects of her history (Tr. 379). Overall, Dr. Baptist-Boles found Plaintiff's presentation consistent with Plaintiff's allegations (Tr. 379).

Dr. Baptist-Boles then conducted the Weschler Abbreviated Scale of Intelligence – Second Edition (WASI-II), Wide Range Achievement Test – Fifth Edition (WRAT-5), Vineland Adaptive Behavior Scales – Third Edition (Vineland-3), and an interview with Plaintiff and Plaintiff's mother (Tr. 379-81). The WASI-II revealed that Plaintiff had a Full Scale IQ of 93, placing her within the average range of intellectual functioning, and, regarding her verbal comprehension and perceptual reasoning indices, there was no significant difference between the scores, suggesting that Plaintiff's verbal reasoning skills were evenly developed with her nonverbal abilities (Tr. 379-80). Dr. Baptist-Boles used the WRAT-5 to assess Plaintiff's word reading, sentence comprehension, math computation, and spelling skills (Tr. 380). Plaintiff's scores in math computation put her in the low average range, while her scores in spelling, word reading, and sentence comprehension put her in the average range (Tr. 380).

Finally, Dr. Baptist-Boles performed the Vineland-3 to measure Plaintiff's adaptive behavior, described as things people do to function in their everyday lives, including communication, daily living skills, and socialization (Tr. 381). The ABC score is based on scores for the following adaptive behavior domains: communication, daily living skills, and socialization (Tr. 381). Dr. Baptist-Boles reported that Plaintiff's overall level of adaptive functioning ABC score was a 76, which was well below the normative mean and placed her in the fifth percentile (Tr. 381). Plaintiff

demonstrated relative strength in the communication domain, which measures how well she listens, understands, expresses herself through speech, reads, and writes (Tr. 381). On the other hand, Plaintiff demonstrated relative weakness in the daily living skills domain, which measures the performance of practical, everyday tasks of living appropriate for Plaintiff's age, as her score placed her in the fourth percentile (Tr. 381). Similarly, her socialization score, which reflects her functioning in social situations, placed her in the fourth percentile (Tr. 381).

After conducting the examination, interviews, and testing, Dr. Baptist-Boles diagnosed Plaintiff with Autism Spectrum Disorder without accompanying intellectual impairment and indicated that she was exhibiting signs of the disorder, meeting the following criteria: "a qualitative impairment in social interaction as manifested by marked impairment in use of nonverbal behaviors such as eye-to-eye gaze, facial expression, body postures, and social gestures, failure to develop peer relationships appropriate to developmental level, persistent preoccupation with parts of objects, no significant delay in language, no significant cognitive delay in the development of age-appropriate skills and adaptive behaviors, and the disturbance causes significant impairment in important areas of functioning" (Tr. 381-82). Dr. Baptist-Boles reiterated that Plaintiff's intellectual functioning fell within the average range, and Plaintiff's achievement tests were consistent with her intellectual functioning, with notable weaknesses in mathematics (Tr. 381-82). Based on observations and test results, Dr. Baptist-Boles opined that Plaintiff would be able to understand, remember, and follow simple instructions but would have a more difficult

time with complex instructions due to inattention and social difficulties (Tr. 382). Dr. Baptist-Boles also noted that Plaintiff would have some difficulty in relationships with coworkers and supervisors, even though Plaintiff was cooperative and pleasant, engaged in conversation, displayed adequate frustration tolerance, and complied with task demands during the evaluation (Tr. 382). Dr. Baptist-Boles indicated that Plaintiff's attention and concentration was impaired and would likely interfere with functioning (Tr. 382). Dr. Baptist-Boles then stated that, when challenged, Plaintiff would likely become frustrated, so her tolerance for stress was questionable (Tr. 382).

Given her findings, Dr. Baptist-Boles opined that Plaintiff's prognosis was fair with vocational support (Tr. 382). More specifically, Dr. Baptist-Boles found that, with consistent implementation of treatment recommendations, Plaintiff's prognosis was good, and Plaintiff would likely show improvements in overall psychosocial wellbeing (Tr. 382). Dr. Baptist-Boles recommended the following treatment: (1) supportive employment with job coaching; (2) targeted case management services to help increase independent living skills; (3) vocational counseling; and (4) transportation services, such as a Votran (Tr. 382).

### 4. *ALJ's Decision*

In the decision, the ALJ summarized the findings of and considered the opinions of Drs. Meyer, Barnett, and Baptist-Boles (Tr. 16-18). Initially, the ALJ found Dr. Meyer's opinion "persuasive, as it is supported by a persuasive summary of the record and consistent with the record as a whole" (Tr. 17-18). The ALJ then found Dr. Barnett's opinion "partially persuasive, as it is mostly supported by the exam and

mostly consistent with the record as a whole, but the limitations are not in vocationally relevant terms" (Tr. 18). Lastly, the ALJ found Dr. Baptiste-Boles's opinion "partially persuasive, as it is mostly supported by the exam and mostly consistent with the record as a whole, but social interaction and attention/concentration limitations are not in vocationally relevant terms" (Tr. 18).

Substantial evidence does not support the ALJ's analysis of the opinions from Drs. Meyer, Barnett, and Baptist-Boles. As the decision reflects, the ALJ incorporated into the RFC only some of the limitations supported by the record by limiting Plaintiff to (1) a low-stress work environment with no production line; (2) the performance of only simple tasks; and (3) having no contact with the public (Tr. 15). For example, based on Plaintiff's very low socialization and overall ABC scores, Dr. Baptist-Boles opined that Plaintiff would have trouble with coworkers and supervisors and with being challenged, yet the RFC limited Plaintiff to only no contact with the public, staying silent as to any limitations with her supervisors or coworkers or other social interactions. As Dr. Baptist-Boles noted, Plaintiff's overall level of adaptive functioning ABC score was a 76, with a socialization score of 74, both well below the normative mean and placing her in the fifth and fourth percentile respectively (Tr. 381). Similarly, Dr. Barnett concluded that Plaintiff's ability to interact with others was variable, as Plaintiff may have difficulty relating to others in a broad sense (Tr. 375). Dr. Meyer likewise concluded that Plaintiff had a history of interpersonal difficulties and would perform best in settings requiring minimal social interaction, especially with unfamiliar persons, as she experienced moderate limitations in her

ability to interact with the general public, to accept instructions and respond appropriately from supervisors, and to get along with coworkers or peers without distracting them or exhibiting behavioral extremes (Tr. 62).

As the Commissioner contends, "an ALJ need not adopt every part of an opinion that the ALJ finds persuasive." *Rivera Misla v. Comm'r of Soc. Sec.*, Case No: 6:20-cv-1076-DCI, 2021 WL 2417084, at *2 (M.D. Fla. June 14, 2021). Here, however, the RFC does not accurately reflect Plaintiff's functionality and limitations based on the findings of the medical practitioners, each of whom the ALJ found persuasive or partly persuasive. Accordingly, the ALJ erred in his consideration of the medical opinions, and remand is therefore warranted.

### B. Subjective Complaints

Plaintiff also argues that the ALJ improperly evaluated her subjective complaints; instead, the ALJ echoed the boilerplate statement that he considered Plaintiff's alleged symptoms and their purported intensity, persistence, and limiting effects but rejected their stated severity.[4] Admittedly, this boilerplate language is

---

[4] In addition to the objective evidence of record, the Commissioner must consider all the claimant's symptoms, including pain, and the extent to which these symptoms can reasonably be accepted as consistent with the objective evidence and other evidence. *See* 20 C.F.R. § 404.1529. A claimant's statement as to pain or other symptoms shall not alone be conclusive evidence of disability, however. 42 U.S.C. § 423(d)(5)(A). To establish a disability based on testimony of pain and other symptoms, the claimant must show evidence of an underlying medical condition and either (1) objective medical evidence confirming the severity of the alleged symptoms or (2) that the objectively determined medical condition can reasonably be expected to give rise to the alleged symptoms. *Wilson*, 284 F.3d at 1225 (citing *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991)); *see* 20 C.F.R. § 404.1529; Social Security Ruling (SSR) 16-3p, 2017 WL 5180304, at *3-9. Consideration of a claimant's symptoms thus involves a two-step process, wherein the Commissioner first considers whether an underlying medically determinable physical or mental impairment exists that could reasonably be expected to

omnipresent in these decisions, and its use is not objectionable if the ALJ supports the findings with substantial evidence. Here, the ALJ did not do that. This is not the typical case where the ALJ rejects the claimant's testimony about her subjective symptoms (like pain) and a record exists about what the claimant has done in the workplace during the relevant time. Plaintiff has no work history and no doubt has no concept of what is entailed for the jobs the ALJ says she can perform. Thus, the ALJ had no relevant testimony to reject, other than the opinions of the medical reviewers. And for the reasons previously outlined, the ALJ's rejection on this score is likewise faulty. The common feature of the medical opinions here and Plaintiff's psychological testing scores, and indeed a predominant feature of Plaintiff's Asperger's Syndrome, is her questionable ability to stay on task not for the moment but for the workday. Whether Plaintiff acted pleasantly and was well-groomed during an examination, for example, are not relevant indicators that she will be able to maintain the pace and persistence that the identified jobs require. Further, although she performed at acceptable levels on some tests and showed average intelligence, as the ALJ correctly noted, those facts alone do not amount to substantial evidence as to whether she can maintain and persist as these jobs demand in light of other test results that reveal her adaptive abilities and focus are suspect. Any job, at its core, requires some minimal ability to adjust and focus. Neither does the fact that she did well

---

produce the claimant's symptoms, such as pain, and, if so, the Commissioner evaluates the intensity and persistence of those symptoms to determine the extent to which the symptoms limit the claimant's ability to perform work-related activities. 20 C.F.R. § 404.1529(b) & (c); Social Security Ruling (SSR) 16-3p, 2017 WL 5180304, at *3-9.

enough in a sheltered school atmosphere where her teachers could patiently satisfy her needs show that she can maintain concentration throughout the workday, at least enough to satisfy the particular demands of the stated jobs in a work atmosphere. In short, the ALJ cannot pick and choose the test results that favor the finding unless the ALJ backs the selection with substantial evidence. Nor can the ALJ look at the evidence without context. Relevancy, as with any fact-finding effort, is still the measuring stick. At best, the expert opinions suggest that the Plaintiff *might* be able to work in a sheltered environment – one with coaching and patience and accommodation. That is what the substantial evidence dictates, and the ALJ did not ask the VE if, assuming those requirements, such jobs exist in the national economy. On remand, the Commissioner should consider Plaintiff's need for workplace accommodations and whether with those accommodations sufficient jobs exist in the national economy given Plaintiff's RFC.

    *IV.   Conclusion*

For the foregoing reasons, the ALJ failed to apply the correct legal standards, and the ALJ's decision is not supported by substantial evidence. Accordingly, after consideration, it is hereby

ORDERED:

1. The decision of the Commissioner is REVERSED and the matter is REMANDED pursuant to sentence four of 42 U.S.C. § 405(g) to the Commissioner for further administrative proceedings consistent with this Order.

2. The Clerk is directed to enter final judgment in favor of Plaintiff and close the case.

DONE AND ORDERED in Tampa, Florida, on this 28th day of March, 2023.

MARK A. PIZZO
UNITED STATES MAGISTRATE JUDGE

cc: Counsel of Record